(101 So. 815)

## CENTRAL IRON & COAL CO. v. WRIGHT.
### (6 Div. 389.)

(Court of Appeals of Alabama. May 20, 1924. Rehearing Denied June 17, 1924.)

1. **Malicious prosecution** ⊂⊃72(4)—**Charge held not objectionable as authorizing inference of malice from judicial investigation and discharge.**

Charge *held* not objectionable as authorizing inference of malice from fact that charge against plaintiff had been judicially investigated, the prosecution ended, and plaintiff discharged.

2. **Malicious prosecution** ⊂⊃32—**Arrest without probable cause authorizes inference of malice.**

Fact of arrest without probable cause authorizes inference of malice.

3. **Malicious prosecution** ⊂⊃16—**Essentials of recovery stated.**

Before being entitled to recover for malicious prosecution, plaintiff *held* required to establish that alleged prosecution was instituted by defendant, that it terminated before institution of instant action, that it was without probable cause, and that it was malicious.

4. **Malicious prosecution** ⊂⊃59(1) — **Testimony relevant to issue of probable cause admissible.**

Any testimony relevant to issue of probable cause is admissible.

5. **Malicious prosecution** ⊂⊃59(5) — **Evidence of conduct of person arrested admissible.**

Evidence of definite character, illustrating conduct of person arrested at or before commencement of prosecution, is admissible on issue of probable cause.

6. **Malicious prosecution** ⊂⊃59(4)—**Reputation of person arrested admissible on issue of probable cause.**

Bad reputation of person arrested, if known to prosecutor at or before arrest, is admissible on issue of probable cause.

---

⊂⊃For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

7. **Malicious prosecution ⬥59(5)—Testimony of plaintiff's threats held competent on issue of probable cause.**

In action based upon employee's arrest upon charge of trespass after his discharge, testimony of defense witness, who arrested plaintiff, that he had received a report of plaintiff's threats to "lay around and beat up" some one "before he went away," was competent, if properly called for, on issue of probable cause.

8. **Witnesses ⬥240(6)—Exclusion of question held proper because leading.**

Exclusion of question, "Had you had reported to you before you made the arrest the fact that * * * [plaintiff] * * * had stated to W. and H. he was going to lay around and beat Mr. S. up before he went away?" *held* proper because question was offensively leading.

9. **Witnesses ⬥236(4)—Exclusion of question as to report to witness arresting plaintiff, of latter's threats, held proper because question did not designate source of report.**

In action based on plaintiff's arrest upon charge of trespass, exclusion of question to witness who arrested plaintiff, whether it had been reported to him that plaintiff had stated that he "was going to lay around and beat up" some one, *held* proper, because question did not designate source of report.

10. **Appeal and error ⬥1058(2)—Exclusion of report to person arresting, of plaintiff's threats, held not prejudicial in view of other testimony admitted.**

In action based on plaintiff's arrest upon charge of trespass, exclusion of testimony of witness, who arrested plaintiff, that he received a report of plaintiff's threats to "beat up" some one, *held* not prejudicial where such witness testified that he knew the plaintiff's general reputation, and that it was bad.

11. **Witnesses ⬥274(1) — Character witness may be cross-examined with reference to particular acts.**

Character witness may be cross-examined with reference to particular acts of person whose character he testifies to.

12. **Witnesses ⬥274(1) — Cross-examination of character witness, as to extent of his information and data, held proper.**

Where witness testified as to bad character or reputation of plaintiff, cross-examining him as to extent of his information and data from which he drew his conclusions *held* proper.

13. **Evidence ⬥106(5)—Particular acts are not admissible as to character on direct examination.**

Particular acts are not admissible as to character on direct examination, because character is proved by general reputation and not by specific acts.

14. **Witnesses ⬥289—Exclusion of question on redirect examination seeking to prove character by particular acts held proper.**

Where character witness on cross-examination stated that he had heard, since action was instituted, of plaintiff's stealing in H., exclusion of question on redirect examination,

"What was it you heard?" *held* proper as attempting to prove character by particular facts.

15. **Malicious prosecution ⬥59(4) — Evidence of character of person arrested limited to question of probable cause and to character at time of and previous to arrest.**

The character or reputation of plaintiff, is relevant only upon the existence vel non of probable cause for prosecution and arrest, and is limited to the character or reputation at the time of and previous to the prosecution and arrest, and not what witness heard since plaintiff commenced action.

16. **False imprisonment ⬥30—Malicious prosecution ⬥63 — Where prosecution is malicious or imprisonment false, bad reputation or character not factor in determining right to recover.**

Where prosecution is malicious and without probable cause therefor, or imprisonment false, plaintiff's bad reputation or character is not a factor in determining his right to recover.

17. **False imprisonment ⬥15(3) — Malicious prosecution ⬥42—Corporation liable for malicious prosecution or false imprisonment caused by agent.**

A corporation is liable to a person injured by a malicious prosecution or by false imprisonment, instituted or caused by its officers, servants, or agents while acting in the course of their employment, whether directly authorized or subsequently ratified.

18. **Corporations ⬥426(7)—Arrest and prosecution by agent of corporation held ratified by corporation by its participation in prosecution.**

Arrest and prosecution of plaintiff by agent of defendant corporation was ratified by corporation when its regular attorney assisted in prosecution of case.

19. **False imprisonment ⬥30—Plaintiff's guilt admissible in mitigation of damages.**

That plaintiff was guilty of offense for which he was imprisoned does not bar action, but is admissible in mitigation of damages.

20. **Malicious prosecution ⬥19 — Plaintiff's guilt bars recovery.**

That plaintiff was guilty of offense for which he was imprisoned bars recovery for malicious prosecution.

21. **Trespass ⬥81—Statute prohibiting trespass after warning intended for protection of possession against intruders.**

Code 1907, § 7827, prohibiting trespass on property after being warned to stay off, is intended for protection of possession of real estate against intruders or trespassers.

22. **Trespass ⬥81 — What constitutes "trespass after warning."**

In order to constitute a "trespass after warning," within Code 1907, § 7827, there must first be warning by person in possession, his agent, or representative, and, after such warning, an entry by person warned.

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**23. Trespass** ☞81—**Entry after warning, if made under "good excuse," is not violation of statute; "legal cause."**

Where one, who has been warned to stay off premises, enters thereon under good excuse, though without legal cause, his entry is not a violation of Code 1907, § 7827; "legal cause" and "good excuse" as used in the section not being equivalent.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Legal Cause.]

**24. Trespass** ☞81—**Entry on employer's property after warning, to get clothes and to wind up business, held not violation of statute; "good excuse."**

Where discharged employee was warned to stay off employer's premises, his return thereto for bona fide purpose of securing his clothing and of closing up his business, and not to interfere with defendant's possession, was made under "good excuse," within Code 1907, § 7827, and was not a violation thereof.

**25. Trespass** ☞81—**One receiving permission to stay on premises to accomplish temporary purpose not trespasser.**

Where after defendant's agent warned plaintiff, a discharged employee, to stay off defendant's premises, the agent permitted plaintiff to get his clothes and wind up his business, plaintiff's entry, though made before the permission was granted, was not a trespass, where he made but one entry and his movements thereafter for purpose stated were continuous.

**26. False imprisonment** ☞39—**Whether plaintiff was trespasser after warning held for jury.**

Whether plaintiff was trespasser after warning *held* for jury.

**27. Malicious prosecution** ☞71 (2) — **Probable cause to believe plaintiff guilty of trespass held for jury.**

Whether defendant had probable cause to believe plaintiff was guilty of trespass after warning *held* for jury.

**28. New trial** ☞72—**Jury's verdict will not be set aside unless palpably erroneous or decidedly wrong and unjust.**

Jury's verdict should not be set aside unless it is palpably erroneous and the preponderance of the evidence is so decidedly adverse to the verdict as to convince the court that the verdict is wrong and unjust.

On Rehearing.

**29. Witnesses** ☞344(1)—**Testimony of general reputation sufficient for impeachment, and particular acts not admissible.**

Testimony of general reputation of plaintiff was sufficient for impeachment purposes, and evidence of particular acts not admissible for that purpose.

**30. Corporations** ☞397—**Agent stands in place of corporation when acting in line of his assigned duties.**

When an agent acts in the line of his assigned duties, he stands in place of the corporation.

Appeal from Circuit Court, Tuscaloosa County; Henry B. Foster, Judge.

Action for false imprisonment and malicious prosecution by H. H. Wright against the Central Iron & Coal Company. Judgment for plaintiff, and defendant appeals. Affirmed.

Certiorari denied by the Supreme Court in Ex parte Central Iron & Coal Co., 212 Ala. 130, 101 So. 824.

Jones, Jones & Van de Graaff and A. V. Van de Graaff, all of Tuscaloosa, for appellant.

The giving of charge A for plaintiff was reversible error. Fowlkes v. Lewis, 10 Ala. App. 543, 65 So. 724; Standard Oil Co. v. Davis, 208 Ala. 565, 94 So. 754; Tutwiler Co. v. Evans, 208 Ala. 252, 94 So. 120; Birmingham R. Co. v. Hunt, 200 Ala. 560, 76 So. 918. There was error in rulings on evidence. Thorn v. Henry, 204 Ala. 546, 86 So. 466; Gulsby v. L. & N., 167 Ala. 122, 52 So. 392; Fowlkes v. Lewis, supra; Jordan v. A. G. S., 81 Ala. 220, 8 So. 191, L. R. A. 1915D, 1, note; Hill v. State, 210 Ala. 221, 97 So. 639. Defendant was due the affirmative charge as to count 3. City Del. Co. v. Henry, 139 Ala. 161, 34 So. 389; Newberry v. Atkinson, 184 Ala. 567, 64 So. 46; L. & N. v. Bartee, 204 Ala. 539, 86 So. 394, 12 A. L. R. 251; Chase Nursery Co. v. Bennett, 205 Ala. 202, 87 So. 610; Warwick v. Mobile County, 17 Ala. App. 206, 84 So. 396; L. & N. v. Lacey, 17 Ala. App. 146, 82 So. 636; Ex parte L. & N., 203 Ala. 328, 83 So. 52; Davis v. Sanders, 133 Ala. 275, 32 So. 499; Sheppard v. Furniss, 19 Ala. 760; Ragsdale v. Bowles, 16 Ala. 62; Woodall v. McMillan, 38 Ala. 622; Williams v. Ivey, 37 Ala. 242; Rhodes v. McWilson, 192 Ala. 675, 69 So. 69; Fuqua v. Gambill, 140 Ala. 464, 37 So. 235; Rich v. McInerny, 103 Ala. 345, 15 So. 663, 49 Am. St. Rep. 32; Strain v. Irwin, 195 Ala. 414, 70 So. 734; Murphy v. McAdory, 183 Ala. 209, 62 So. 706; Milner v. Milner, 101 Ala. 599, 14 So. 373. And as to count 2. Tutwiler Coal Co. v. Tuvin, 158 Ala. 657, 48 So. 79; Owens v. State, 74 Ala. 401; Wilson v. State, 87 Ala. 117, 6 So. 394; Cross v. State, 147 Ala. 125, 41 So. 875; Holland v. State, 139 Ala. 120, 35 So. 1009; Watson v. State, 63 Ala. 19; Shannon v. Simms, 146 Ala. 673, 40 So. 574; Shroder v. Brenneman, 23 Pa. 348; Coleman's Appeal, 62 Pa. 275; 38 Cyc. 1183; Code 1907, § 2827; 28 A. & E. Ency. 558; 2 Greenleaf on Evi. § 629. Defendant's motion for new trial should have been granted. Sou. Ry. v. Grady, 192 Ala. 515; Mutual L. I. Co. v. Mendelbaum, 207 Ala. 234, 92 So. 440.

Edward de Graffenried, of Tuscaloosa, for appellee.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Charge A was correctly given. 11 R. C. L. 792; 12 Ann. Cas. 36; Davis v. Sanders, 133 Ala. 275, 32 So. 499; Rhodes v. McWilson, 192 Ala. 675, 69 So. 69; Ragsdale v. Bowles, 16 Ala. 62; Williams v. Ivey, 37 Ala. 242. It is not necessary in pleading to allege that a corporation acted by its agents or servants. Evans Bros. Const. Co. v. Steiner Bros., 208 Ala. 306, 94 So. 361; 14 A. Corpus Juris, § 2970. It was not necessary to show ratification by the directors or stockholders of the corporation. Union Naval Stores Co. v. Pugh, 156 Ala. 369, 47 So. 48; Hart v. Jones, 14 Ala. App. 327, 70 So. 206; Ex parte Bellevue Highlands Co., 195 Ala. 695, 70 So. 1012; E. & T. R. Co. v. McKee, 99 Ind. 519, 50 Am. Rep. 102; Goff v. Great Northern, 30 L. J. C. L. 148; 2 Addison on Torts, § 817; Perryman & Co. v. Farmers' Union Co., 167 Ala. 414, 52 So. 644; So. States F. & C. I. Co. v. Lundsford, 192 Ala. 76, 68 So. 273; Strader's Adm'rs v. Lexington Hydraulic Co., 146 Ky. 580, 142 S. W. 1073; Ala. Fuel Co. v. Rice, 187 Ala. 458, 65 So. 402. An act of trespass by the vice-principal is in law the act of the principal. Epperson v. Bank of Reform, 209 Ala. 12, 95 So. 343. Evidence that an agent of the corporation instigated the malicious prosecution is sufficient to meet allegations charging the corporation. 11 R. C. L. 792; 12 Ann. Cas. 36.

BRICKEN, P. J. H. H. Wright brought his action in the circuit court of Tuscaloosa county, Ala., to recover of Central Iron & Coal Company the sum of $2,900, first, for malicious prosecution as charged in count second of the complaint, and, second, for false imprisonment, as charged in the third count of the complaint. Issue was joined between the plaintiff and defendant on plaintiff's complaint as set out in the second and third counts thereof, and defendant's plea of the general issue, with leave to give in evidence anything that might be specially pleaded. There was judgment for plaintiff in the sum of $600, and from this judgment, as well as the judgment of the trial court upon defendant's motion for a new trial, this appeal is taken.

H. H. Wright, plaintiff in the court below, was in the employ of defendant company prior to and probably including the 30th day of April, 1922. On the morning of the 30th day of April, 1922, plaintiff was discharged from the employment of defendant company. At this time one Willis Jones, who was a deputy sheriff of Tuscaloosa county, Ala., was also in the employ of the defendant company, his salary as deputy sheriff being paid by the company, and as to the scope of his employment the said Jones, among other things, testified, "When I had this transaction with the plaintiff, I was engaged in regular duties for the company." If this statement be true, then the scope of the employment and the scope and line of duty of this witness in so far as defendant company is concerned was, among other things, to warn persons off of defendant's property and to arrest trespassers thereon.

On the night of April 30, 1922, according to the testimony of plaintiff, Willis Jones went to the house of Frank Swanager, where plaintiff was then boarding, between 7:30 and 8 o'clock, and when plaintiff was partly undressed, plaintiff being then in the act of retiring for the night and stated to plaintiff: "Henry, you have to leave Holt. You have got to do it to-night." To this statement plaintiff replied, "Mr. Jones, it is impossible for me to go away to-night." Thereupon said Jones replied, "Well, do it in the morning," and the plaintiff answered, "I will do that." According to the testimony of plaintiff, he spent the night at Holt and caught a street car for Tuscaloosa the following morning at 7:30 or 8 o'clock. Plaintiff returned to Holt the same afternoon, according to his statement, for the purpose of getting some clothes and "to wind up my business down there." According to plaintiff's statement, he applied to Jones, unnecessarily, we think, if he in fact returned for his clothes and to wind up his business, for permission to get his clothes and wind up his business, and to this request Jones stated to plaintiff that he "could go down to the furnace and get my (plaintiff's) clothes and wind up my (plaintiff's) business and to make it as short as possible." Thereupon plaintiff went to the furnace and got some soiled overalls, which were too dirty to be packed and which he sold to one Malloy Swanager; next he paid one George Higganbottom some "time" which plaintiff had received and which belonged to said Higganbottom and which payment was corroborated by said Higganbottom, and thereupon, on his return from the furnace to the car station, he stopped at defendant's commissary, which, plaintiff testified, was about midway between furnace and station, to get some money changed; the money being changed, plaintiff was leaving the commissary when he was arrested by Jones, about 5:15 o'clock, and about one hour after plaintiff's return to defendant's premises. Jones caught plaintiff by the arm and said: "Come on, God damn you! I am going to learn you something. You have been too smart." Jones carried plaintiff from Holt to Tuscaloosa and to the office of a justice of the peace, Peck Cornell, where Jones swore out a warrant for plaintiff. Jones next carried plaintiff to the county jail of Tuscaloosa county, where he imprisoned plaintiff, and where plaintiff remained imprisoned until 11 o'clock a. m., May 6, 1922, when he was arraigned and tried before the county court of Tuscaloosa county, to which the warrant was returnable, on a charge of trespass after warning, and of which said charge plaintiff was

then and there judicially ascertained to be not guilty, and was, accordingly, acquitted.

Willis Jones, testifying in behalf of the defendant, stated the facts to be substantially as follows: That he found the plaintiff at night, meaning the night of April 30th; that he told plaintiff that the superintendent had told witness to tell plaintiff to get off the company's property and to stay off; that he told plaintiff that plaintiff could go in the morning; that plaintiff first said he could go· in the morning and then said he (plaintiff) would go when he got ready; that the next morning he told plaintiff about 9 o'clock that he thought he had told plaintiff to stay off the property; that plaintiff replied, "I am going now," and, after walking a few feet, said that he (plaintiff) did not know whether he was going or not; that he might go; that he next saw plaintiff in the afternoon, about 3 o'clock, when plaintiff asked for permission to go to the furnace, which was refused by the witness, and when the witness further stated to the plaintiff to get off of the property and to stay off of it; that he next saw plaintiff walking around down about the furnace; that witness did not then say anything to plaintiff and that it was then nearly 4 o'clock; that witness next saw plaintiff in the commissary, which was owned and operated by the defendant and that plaintiff was then leaning against a radiator in the commissary and that the witness then said to plaintiff, "Henry, I thought I told you to go away from here, to get off of the company's property and to stay off of it," which statement plaintiff admitted that witness had made to him; that he next asked plaintiff what right he had there and that plaintiff answered he was not ready to go; that witness then said to plaintiff, "Well, I will have to arrest you, Henry, for being on their property trespassing;" that at the time he arrested plaintiff he (the witness) did not touch him; that he had consulted with Mr. Cornell, a justice of the peace, in regard to the law of trespass after warning; that when he arrested plaintiff he (the plaintiff) was in the presence of the witness; that he carried him to the sheriff's office and made an affidavit and got a warrant of arrest for plaintiff and turned him over to the sheriff.

On cross-examination, among other things, the witness testified that Mr. Henry Jones was the regular attorney for defendant; that he (the witness) did not consult with defendant's attorney until after the arrest; that Mr. Jones, defendant's attorney, prosecuted the plaintiff in the county court; that the plaintiff stayed in jail five or six days.

[1, 2] There are eight assignments of error, six of which are insisted upon. The first assignment of error is based upon the action of the trial· court in giving special written charge A requested by plaintiff. Charge A is as follows:

"A. I charge you, gentlemen of the jury, that malice in law and malice in fact are not one and the same thing, and that if you are reasonably satisfied from the evidence that the defendant caused the arrest of the plaintiff upon a charge of trespass after warning without probable cause therefor, and further that before the commencement of action that charge was judicially investigated and that said prosecution ended and that the plaintiff was discharged, you may infer malice in law from those facts, and if you are further reasonably satisfied from the evidence that the plaintiff's arrest was maliciously caused by the defendant, the plaintiff will be entitled to a verdict at your hands."

Appellant insists that this charge expressly authorized the jury to infer malice from the fact that the charge against appellee had been judicially investigated, the prosecution ended, and the appellee discharged. We do not agree with appellant in its contention as to the meaning of said charge. The charge asserts, first, that malice in law and malice in fact are not one and the same thing, second, that if the jury are reasonably satisfied from the evidence that the defendant caused the arrest of the plaintiff upon a charge of trespass after warning without probable cause therefor, and that before the commencement of the action the charge against plaintiff had been judicially investigated and said prosecution ended and the plaintiff discharged, then, third, the jury would be authorized to infer malice in law from these facts. What facts? That the arrest was without probable cause and that the charge had been judicially investigated, the prosecution ended, and the defendant discharged. If the arrest was without probable cause therefor, then this alone would be sufficient to authorize the inference of malice, for, as was said in the quotation set out in the case of Fowlkes v. Lewis, 10 Ala. App. 543, 555, 65 So. 724, 728:

"Any other motive than a bona fide purpose to bring the accused to punishment as a violator of the criminal law, or associated with such bona fide purpose is malicious." Lunsford v. Dietrich, 93 Ala. 565, 9 So. 308, 30 Am. St. Rep. 79; Jordan v. Alabama Great Southern R. Co., 81 Ala. 220, 8 So. 191; Rutherford v. Dyer, 146 Ala. 665, 40 So. 974.

If the arrest was made without probable cause therefor, then it could not have been made for the bona fide purpose of bringing the accused to punishment as a violator of the criminal law, and such could not have been associated with a bona fide purpose of bringing the accused to punishment for an offense of which no probable cause existed to believe that the person arrested was guilty. The arrest therefore must have been made for some other purpose, and this the law declares to be malicious. Charge A asserts correct principles of law applicable to the facts of the cause at bar, and the trial court committed no error in giving said charge.

Appellant's second assignment of error is based upon the action of the trial court in sustaining appellee's objection to the following question propounded by appellant's counsel to the witness Willis Jones:

"Had you had reported to you before you made the arrest the fact that Mr. Wright had stated to Geddie Wilson and Dock Herring he was going to lay around and beat Mr. Swanager up before he went away?"

The appellant insists that this question called for testimony which was competent upon the inquiry as to whether or not Willis Jones had probable cause to believe that the appellee, at the time he was arrested by Willis Jones, was committing the offense of trespass after warning.

[3] In order for the plaintiff to recover in the court below for a malicious prosecution by the defendant, it was necessary for the plaintiff to establish by the evidence to the satisfaction of the jury the following four elements:

(1) That the alleged prosecution was instituted by the defendant.

(2) That said prosecution was terminated before the suit was brought.

(3) That said prosecution was instituted without probable cause to believe that the plaintiff was guilty.

(4) That said prosecution was malicious. Fowlkes v. Lewis, supra.

[4-7] It is perfectly apparent that any testimony relevant to the issue of probable cause is competent testimony upon the trial. So it has been held that evidence of general bad character is competent; evidence of a definite character illustrating the conduct of the person arrested at, or before, the institution of the prosecution, is likewise admissible. Thorn v. Henry, 204 Ala. 546, 86 So. 466. The bad reputation of the person arrested, if known to the prosecutor at or before the arrest, is material upon the issue of probable cause. Gulsby v. Louisville & Nashville R. R. Co., 167 Ala. 122, 133, 52 So. 392. We think the testimony which the question sought to elicit, if properly called for, would have been competent.

[8-10] But we do not think that the court erred in sustaining the objection to the question as propounded for the following reasons: The question was offensively leading; the question did not designate the source of the report that the plaintiff "had stated to Geddie Wilson and Dock Herring he was going to lay around and beat Mr. Swanager up before he went away." The plaintiff was entitled to the source of this information for rebuttal purposes if necessary, and the question should have therefore indicated the source of the report made to the witness Willis Jones of the threats inquired about. The question propounded is subject to the following criticism from the case of Thorn v. Henry, supra:

"The structure of the question justifies its interpretation as calling for a mere rumor, an indefinite character of information from an undesignated source. So interpreted, the question was properly excluded on general objection."

Moreover, it appears that this witness testified that at the time he arrested the plaintiff he knew plaintiff's general reputation and that it was bad. So the defendant got the full benefit of the evidence in question; that is to say, the witness knew the reputation of plaintiff and had personal knowledge of this reputation and such reputation was bad.

[11-14] During the progress of the trial in the court below, one John Andre was introduced as a witness for the defendant. He testified as to the bad character, or reputation, of the plaintiff. This testimony was competent upon the issue of probable cause, as has hereinabove been stated. On cross-examination, this witness, it appears, was questioned as to the extent of his information and the data from which he drew his conclusions. This was entirely within the legitimate bounds of cross-examination of the witness as to his knowledge of the general character or reputation of the plaintiff. De Arman v. State, 71 Ala. 351, 361. On cross-examination of a witness as to character it is perfectly proper and competent to make inquiry with reference to particular acts of the person whose character is testified to, and this for the purpose of testing out the knowledge of the witness as to the general character testified to and as to the data from which the witness draws his conclusions. But particular acts are never admissible in evidence as to character upon direct examination. Steele v. State, 83 Ala. 20, 3 So. 547. On his cross-examination, among other things, this witness testified that—

"I never heard of his stealing in Sheffield, but I heard of it down at Holt in the last few days, since the case came up."

[15, 16] Thereupon the appellant propounded to the witness this question: "What was it you heard of his stealing down there at Holt?" The trial court sustained appellee's objection to this question, and the action of the trial court in so sustaining the objection is made the basis of appellant's third assignment of error. For the reasons which we have above enumerated the trial court did not err in sustaining the objection to the question propounded. In addition thereto, the question of character, or reputation, is relevant only upon the existence, vel non, of probable cause for the prosecution and arrest. So it would be the character, or reputation, of plaintiff at the time of the institution of the prosecution and at the time of the arrest that would be relevant and competent, and not what the witness had heard since plaintiff's case was brought against defendant. Evidence of the character of the plaintiff

should have been confined to the time of, and prior to, the arrest, prosecution, and imprisonment of plaintiff. Smith v. State, 197 Ala. 198, 72 So. 316. If the prosecution against plaintiff by defendant was malicious and without probable cause therefor, or if plaintiff was falsely imprisoned by defendant, then the bad reputation, or character, of plaintiff was not a factor in determining his right to recover. Gulsey v. Louisville & Nashville R. R. Co., supra.

[17] Under the third count of the complaint, the plaintiff sought to recover of the defendant his alleged damages for that the defendant, "maliciously and without probable cause therefor, caused" the plaintiff to be arrested and imprisoned on a charge of trespass after warning, etc. As to this count the appellant requested the trial court to give the general affirmative charge in behalf of the defendant, which charge was in writing and which charge the trial court refused to give. The refusal of the trial court to give this charge is made the basis of appellant's fourth assignment of error. Appellant insists that the trial court committed reversible error in refusing to give said charge upon two different grounds: First, that the false imprisonment is charged as a corporate act and that there is absolutely no proof in support thereof; and, second, that the plaintiff was in fact guilty of the offense of trespass after warning. We will dispose of the questions as they are presented to us.

The witness Willis Jones testified upon cross-examination: "When I had this transaction with the plaintiff, I was engaged in regular duties for the company." That is to say, this witness testified in substance that in giving the warning which he testified he did give, in arresting the plaintiff whom he testified he did arrest, and in taking him into custody and carrying him to Tuscaloosa to the sheriff's office, and in swearing out the warrant charging plaintiff with trespass after warning, all of which Jones testified he did, he, said witness, as the servant or agent of defendant corporation, was acting in the 'line of his duty and was about his master's business. The third count of the complaint is in Code form and was sufficient. It is a count in trespass. The defendant company is a corporation. A corporation of necessity can only act through its officers, its agents, its servants, and its employees. Hart et al. v. Jones, 14 Ala. App. 327, 70 So. 206; Louisville & Nashville R. R. Co. v. Dawson, 14 Ala. App. 272, 68 So. 674.

As affecting criminal prosecutions instituted by a corporation, it was said in the case of Southern Car & Foundry Co. v. Adams, 131 Ala. 147, 32 So. 503:

"When a criminal prosecution is instituted by a corporation through its agent, for a malicious injury to property, the person in its employment who instigated the prosecution, and even made the affidavit of arrest, is not the prosecutor, but the corporation for which he acted is. Jordan v. A. G. S. R. R. Co., 81 Ala. 221 [8 South. 191]; 14 Am. & Eng. Enc. Law 38–40. Corporations are responsible civilly, the same as natural persons, for wrongs committed by their officers, servants or agents, while in the course of their employment, or which are authorized, or subsequently ratified." Jordan v. Railroad Co., 74 Ala. 85, 49 Am. Rep. 800; Railroad Co. v. Whitman, 79 Ala. 328; Case v. Hulsebush, 122 Ala. 217, 26 So. 155; 10 Cyc. 1216, 1217.

That a corporation is responsible civilly to a person injured by a malicious prosecution, or by false imprisonment, instituted, or caused, by its officers, servants, or agents, while acting in the course of their employment, whether directly authorized, or subsequently ratified, is firmly established in this jurisprudence. Jordan v. Railroad Co., 74 Ala. 85, 49 Am. Rep. 800; Railroad Co. v. Whitman, 79 Ala. 328; Case v. Hulsebush, 122 Ala. 217, 26 So. 155; Gorman-Gammill Seed & Dairy Supply Co. v. Morton, 203 Ala. 530, 84 So. 766; Epperson v. First Nat. Bank of Reform, 209 Ala. 12, 95 So. 343; Southern Ry. Co. v. Hall, 209 Ala. 237, 96 So. 73; Standard Oil Co. v. Humphries, 209 Ala. 493, 96 So. 629.

It has hereinbefore been stated that both the second and third counts of the complaint are in Code form (section 5382, subds. 19, 20, Code of Ala. 1907). The second count, charging malicious prosecution, and the third count, charging false imprisonment, are according to the provisions of the Code form. In each count it is charged that said corporation, the defendant company, caused the act complained of to be done, and it is now insisted that, because there was a lack of proof that the act, or acts, complained of were directly authorized by the corporation itself, the appellant was entitled to the affirmative charge as to the third count of the complaint. This insistence of appellant is founded upon the proposition that there was a variance between allegation and proof, or that the proof failed to sustain the allegation. The cases of City Delivery v. Henry, 139 Ala. 161, 34 So. 389; Bessemer Coal Co. v. Doak, 152 Ala. 166, 44 So. 627, 12 L. R. A. (N. S.) 389; B. R. L. & P. Co. v. Hayes, 153 Ala. 178, 44 So. 1032; Newberry v. Atkinson, 184 Ala. 567, 64 So. 46; L. & N. R. R. Co. v. Abernathy, 197 Ala. 512, 73 So. 103—are cited by the appellant in support thereof. We do not think these authorities can be so construed as to support the present insistence of appellant. The allegation in the complaint is that the defendant corporation caused the act complained of to be done. The act complained of was done by the agent of the corporation who testified that he was acting "in regular duties for the company." It was not Willis Jones, the agent, therefore, of the defendant corporation, who arrested and took into his custody the plaintiff in this case, but

it was the defendant corporation itself. Southern Car & Foundry Co. v. Adams, supra. If Willis Jones, defendant corporation's agent, was engaged in his regular duty for the company, as he testified and as against which testimony there is absolutely nothing in this record to the contrary, then he had the authority of the company to give the warning, he had the authority of the company to make the arrest, and he had the authority of the company to make the affidavit and warrant. As was said in the case of Standard Oil Co. v. Davis, 208 Ala. 565, 568, 94 So. 754, 756:

"He was the responsible representative of the company, and in the conduct of that part of its business may be said to have been its alter ego. Hence his authority to cause an arrest or prosecution of one who stole the money of the company from a filling station in Bessemer may well be implied; and if in the course of such a service he acted wrongfully and (in any legal sense) maliciously, his principal would be legally responsible for such conduct, even to the extent of punitive damages."

It was upon this same theory that in the case of Hotel Tutwiler Operating Co. v. Evans, 208 Ala. 252, 94 So. 120, our Supreme Court held that counts 1 and 2 of the complaint, which charged that the defendant, a corporation, unlawfully arrested and imprisoned plaintiff, or caused it to be done, were supported by evidence that said arrest and imprisonment was caused by the hotel manager, who was designated as an alter ego, or vice principal, of the corporation, and in that case it was said:

"A count charging trespass against a corporation, as its own direct act, may be supported by proof that it was authorized or ratified by the vice principal or alter ego of the corporation."

To the same effect is the case of Hart v. Jones, 14 Ala. App. 327, 70 So. 206, and to revise which our Supreme Court denied the writ of certiorari. The question under consideration, we think, is conclusively established against the position of appellant by the case of Epperson v. First Nat. Bank of Reform, 209 Ala. 12, 95 So. 343, which is the last case from our Supreme Court covering the proposition to which our attention has been called. The principles there announced are in accord with and in support of the conclusions hereinabove announced and are founded upon the pronouncements in the cases of Southern Car & Foundry Co. v. Adams, supra (131 Ala.), and in Jordan v. A. G. S. R. R. Co., 74 Ala., supra.

[18] There is another reason, to our minds, why the affirmative charge requested by appellant should not have been given by the trial court, and that is upon the assumption that the evidence in this case shows that the defendant corporation ratified and affirmed the act of its agent, Willis Jones, in the arrest, detention, and imprisonment of the plaintiff. The testimony shows that—

"Mr. Henry Jones is the regular attorney for the defendant. I didn't consult with him until after I arrested plaintiff. Mr. Cornell is not a lawyer; he is a justice of the peace. Mr. Jones prosecuted the plaintiff in the county court. I went to Mr. Jones and talked to him about the case."

In this connection it is to be recalled that the appellee was arrested on May 1, 1922, at Holt, and that he was arraigned and tried before the county court of Tuscaloosa county on May 6, 1922. According to the testimony in this case, when the appellee was arraigned for trial on the criminal charge brought against him for trespass after warning, the regular attorney of appellant was present and prosecuted, or assisted in the prosecution of, the case against appellee. It thus appears that the appellant, through its regular attorney, then contended, as it now contends, that the appellee was guilty of the offense with which the appellee was charged. The appellant then sought to secure the conviction of the appellee, and by its participation in the prosecution of the appellee of the offense of trespass after warning we think the appellant ratified and approved the arrest and prosecution of appellee. It therefore appears that having ratified and approved the act of its agent, even granting he was without authority in the premises, the defendant corporation is bound. Authorities, supra.

[19, 20] Appellant also insists that the general charge as to the third count of the complaint should have been given for the reason that the evidence established the guilt of appellee of the offense of trespass after warning. The third count of the complaint charges false imprisonment. As we understand the law, the fact that the plaintiff, in an action for false imprisonment, was in fact guilty of the offense for which he was imprisoned, may be shown in mitigation of the damages for a false imprisonment and in bar to the recovery of damages for a malicious prosecution. Shannon v. Simms, 146 Ala. 673, 677, 40 So. 574. Inasmuch as the count to which the charge was directed was a count claiming damages for false imprisonment, the general charge could not have been given as against this count upon the assumption that plaintiff was in fact guilty of the offense for which he was imprisoned.

[21, 22] The same question, however, is presented under the fifth assignment of error for the refusal of the trial court to give the affirmative charge against the second count of the complaint which sought a recovery of damages for a malicious prosecution, and as to this count the guilt of plaintiff of the offense for which he was prosecuted was competent evidence in bar of the right of recovery. And we therefore proceed to a consideration of this question, it being

strenuously insisted by appellant that the evidence shows that the appellee was guilty of the offense of trespass after warning at the time he was arrested. Section 7827 of the Criminal Code of Alabama 1907 provides, that any person who, without legal cause or good excuse, enters upon the premises of another, after having been warned, within six months, not to do so, or any person who, having entered upon the premises of another, after having been warned within six months not to do so, and fails or refuses, without legal cause or good excuse, to immediately leave on being ordered or requested to do so by the person in possession, his agent or representative, must, on conviction, be fined not more than $100, and may also be imprisoned in the county jail, or sentenced to hard labor for the county for not more than three months. Under the evidence, as shown by the record in this case, does it necessarily follow that the appellee was in fact guilty of the offense of trespass after warning and for which he was arrested and prosecuted? It is first to be observed that the appellee was arraigned and tried before the county court of Tuscaloosa county on this charge and was acquitted. It is next to be observed that the trial court in the case at bar explicitly charged the jury selected for the trial of this case that if they were reasonably satisfied that Willis Jones had probable cause for believing and did believe that Wright, the appellee, was guilty of the offense of trespass after warning, then the appellant would not be liable in the action, and this question in its various applications was more than once correctly charged to the jury. Special charges 2, 5, 6, 10, 11, 18, 19, 20, 22, 23, all emphasize the proposition that the guilt of the plaintiff of the offense for which he was arrested, or the existence of probable cause to believe him guilty at the time of his arrest, would constitute a defense to the action. The jury that tried the case had the law correctly expounded to it both in the general charge of the court and in the special written charges requested by appellant; but the jury returned its verdict in favor of the plaintiff, appellee here, thus indicating beyond question that the jury did not believe that the defendant was either guilty of the offense for which he was arrested or that probable cause existed to believe him guilty at the time of his arrest. The trial court overruled the motion to set aside the verdict of the jury and to grant a new trial.

The cited provisions of the above statute are intended for the protection of the possession of real estate, against the entry of intruders, or trespassers. Watson v. State, 63 Ala. 19. In order to constitute a trespass after warning, there must first be a warning by the person in possession of the premises, his agent, or representative, and, second, after such warning there must be an entry by the person warned. That an entry upon the premises after warning is made for a legal cause or under a good excuse will justify the entry is apparent from the provisions of the statute. Can it be said as a matter of law and of fact that under the evidence in this case appellee entered upon the premises of appellant within six months after being warned not to do so and that such entry was not for a legal cause or under a good excuse? The answer to this inquiry is dependent upon whether or not the testimony of appellee is to be believed, or not. The evidence of the appellee tends to establish the following facts: That he was warned to leave Holt, or the premises of appellant, on the night of April 30, 1922; that he then stated that it would be impossible for him to leave until the next morning; that he was then warned to leave the following morning; that he did leave the next morning about 7:30 o'clock for Tuscaloosa; that while on the way to the car station defendant's agent, Willis Jones, told plaintiff, "I thought I told you to leave Holt," and that plaintiff replied, "I am going right now, Mr. Jones"; that when plaintiff left Holt that morning he then had property, viz., his clothing, on the premises of defendant; that he returned from Tuscaloosa to Holt about 3:30 or 4 o'clock on the afternoon of that day for the bona fide purpose of getting his clothes and winding up his affairs; that when he reached Holt he went directly looking for Mr. Jones to get permission to get his clothes and wind up his business, and that Jones gave this permission (Jones denied giving the permission, but stated that plaintiff requested the permission); that while returning to the car station after securing his clothes and winding up his business, he went into the commissary of defendant, a place open to the public, to get a $5 bill changed; and that as he was leaving he was arrested.

[23, 24] If plaintiff, after being warned to leave the premises of defendant and not return thereto, did return for the bona fide purpose of securing his clothing and for the bona fide purpose of closing up his business, and not for the purpose of interfering with defendant's possession of its real estate, then it is our opinion that such entry was made under a good excuse for so doing. "Legal cause" and "good excuse" are not equivalent to each other, and an entry upon premises after being warned not to do so, if made without legal cause and yet made under a good excuse for such entry is not in violation of the statute. The case of Milner et al. v. Milner, 101 Ala. 599, 14 So. 373, to which we are referred by appellant, was a civil case of trespass, and that authority declares that a civil trespass is not justified by an entry of the trespasser for the purpose of taking possession of the personal property of the trespasser; but that author-

ity has no application here, for, as was said in the case of Watson v. State, supra, this statute "cannot be made to serve all the purposes of an action of trespass quare clausum fregit," and the statute itself is not directed against a trespass made under good excuse.

[25] In addition to what we have hereinabove said, the testimony of plaintiff tended to show that he obtained the permission of the defendant to get his clothes and wind up his business. The argument that the offense had already been committed by the entry, and that the agent, Willis Jones, had no authority to give the permission, or license, does not impress us. If the defendant in fact did give plaintiff permission, or license, to go for his clothes and wind up his business, then plaintiff was not a trespasser, for the evidence for plaintiff shows that there was but one entry and that his movements thereafter on the premises of defendant were continuous. If this testimony was true, then the facts of this case bring it within the operation of the rule of Owens v. State, 74 Ala. 401, 405, where it was declared:

"There was but one act proved; an act somewhat continuous in its nature. A single entry, and moving from place to place on the lands of the prosecutor, on one and the same occasion, could not, it would seem, be divided into two acts of trespass."

[26, 27] From what we have said, it will be seen that whether or not the plaintiff was in fact a trespasser, and whether or not defendant had probable cause to believe that plaintiff was a trespasser, were questions, under the evidence in this case, for the determination of the jury, and the trial court, therefore, did not err in refusing to give the general charge against the second count of the complaint. Warrant Warehouse Co. v. Cook, 209 Ala. 60, 95 So. 282; Farrow v. Burns, 18 Ala. App. 350, 92 So. 236.

Appellant's sixth assignment of error is based upon the refusal of the trial court to give defendant's special charge No. 52, which was the general affirmative charge against the plaintiff, and appellant's seventh assignment of error is based upon the refusal of the trial court to give defendant's special charge No. 54, which was the general charge in favor of the defendant. For the reasons hereinabove given, we hold that the trial court did not err in refusing to give either one of said charges.

[28] Appellant's eighth and last assignment of error is based upon the refusal of the trial court to grant the defendant a new trial. The argument and insistence to this court is that the verdict of the jury was contrary to the great weight of the evidence. It will serve no good purpose to further consider the evidence in detail. The trial court had before it the witnesses; it had before it all of the evidence offered in support of the motion and, after a due consideration thereof, the motion was overruled, thus demonstrating that it was the judgment of the trial court that the motion should be overruled. The verdict of a jury should not be set aside unless it is palpably erroneous and unless the preponderance of the evidence is so decidedly adverse to the verdict as to convince the court that the verdict is wrong and unjust. Jena Lumber Co. v. Marlowe Lumber Co., 208 Ala. 385, 94 So. 492; Cobb v. Malone, 92 Ala. 630, 9 So. 738. Measuring the verdict of the jury in this case by the rule above declared, this court is not prepared to say, and does not say, that the verdict was either palpably erroneous or that it was wrong and unjust. We therefore hold that the trial court did not err in overruling appellant's motion for a new trial upon the ground insisted upon before us.

We have given consideration to the record and briefs furnished us in this case. Every question presented has been ably and elaborately argued by counsel for appellant, and in like manner the brief of appellee has convincingly presented appellee's answer to each question insisted upon. We find no error in the record, and the judgment of the trial court is therefore affirmed.

Affirmed.

FOSTER, J., not sitting.

### On Rehearing.

BRICKEN, P. J. In addition to what has been said as to charge A, it may be added that at the instance of appellant the trial court gave the written charge which specifically and directly charged the jury the fact that the charge had been judicially investigated and the prosecution ended would not of itself justify a verdict against the defendant. This proposition was asserted in various written charges given at request of defendant.

[29] As to the third assignment of error, character evidence is material in actions of this kind as relevant upon the existence vel non of probable cause. Probable cause is relevant upon the issue or existence of malice. If at the time of the arrest probable cause existed, then the arrest is not malicious. So it is perfectly plain that upon this phase it would only be the character of the person arrested as it existed at the time of and previous to the arrest. It is now insisted that this evidence was competent for impeachment purposes. John Andre, the witness, testified that the general reputation of plaintiff was bad. This was sufficient for impeachment purposes. Character is proved by general reputation and not by specific acts. Jackson v. State, 106 Ala. 12, 17 So. 333; Byers v. State, 105 Ala. 40, 16 So. 716.

As to the fourth assignment of error: No reference was made to the case of Ex parte

L. & N. R. R. Co., 203 Ala. 328, 83 So. 52, in the opinion for this reason: The Supreme Court held in that case that the right of the passenger to a safe and unmolested carriage on defendant's train was a right growing out of a contractual relation between plaintiff and defendant railway company; that when the conductor assaulted and beat the passenger this was a breach of the contract; and that the proper action therefore was in case and not in trespass.

[30] Upon the proposition that the allegations of the third count of the complaint in this case are not sustained by the proof, the authorities cited in the original opinion are ample and sufficient. Jones testified, and it is admitted by appellant, that when Jones arrested plaintiff he (Jones) was acting in the line of his assigned duty. The case of Epperson v. First Nat. Bank of Reform, 209 Ala. 12, 95 So. 343, is authority for the proposition that, "In the line of his assigned duties, the agent stands in the place of the corporation." L. & N. R. R. v. Whitman, 79 Ala. 328.

Application overruled.

FOSTER, J., not sitting.